IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL CHAVIS et al.,

    *Plaintiffs,*

    v.

                          Civil Action No. ELH-17-2729

PLUMBERS AND STEAMFITTERS
LOCAL 486 PENSION PLAN et al.,

    *Defendants.*

**MEMORANDUM OPINION**

This case arises under the Employer Retirement Income Security Act of 1974, as amended ("ERISA"), and concerns retirement benefits under the Plumbers and Steamfitters Local 486 Pension Plan (the "Plan"), an employee pension benefit plan. Plaintiffs Stanley Taylorson, Jr. and Michael Chavis are Plan participants who accrued vested benefits for the time they worked in union positions. ECF 1 (Complaint), ¶¶ 22-25, 77. After plaintiffs retired from union positions, they commenced working in non-union management positions, and began receiving service retirement benefits. *Id.* ¶¶ 32-37, 82-87. However, their benefits were subsequently suspended. *Id.* ¶¶ 38, 56, 89, 110. As a result, plaintiffs brought suit against the Plan, as well as several fiduciaries of the Plan,[1] seeking reinstatement of their benefits, removal of defendants as fiduciaries, and other equitable relief. *See* ECF 1 at 2.

In particular, plaintiffs assert claims for wrongful denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (Count I); breach of fiduciary duty under § 502(a)(2), 29 U.S.C. § 1132(a)(2) (Counts II and IV); and "other appropriate equitable relief" under

---

[1] The other defendants, all of whom are current or former Plan fiduciaries, are William Welsh, Mark Jackman, Wayne Adkins, Gerard Jackson, Sr., Spencer Matusky, Steve Weissenberger, Joel Meredith, Jeffery Moderacki, Mark Eckstein, Thomas Hayes, Jr., James Estabrook, Robert Rimel, Dale Troll, and Sarah Talerico. ECF 1 at 2; *id.* ¶¶ 4-17.

§ 502(a)(3), 29 U.S.C. § 1132(a)(3) (Counts III and V). In addition, plaintiffs seek attorneys' fees under § 502(g), 29 U.S.C. § 1132(g) (Count VI).

Defendants have moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 24. Their motion is supported by a memorandum of law (ECF 24-1) (collectively, "Motion") and several exhibits. Plaintiffs oppose the Motion. ECF 25; ECF 25-1 (collectively, "Opposition"). Defendants have replied. ECF 27 ("Reply"). Plaintiffs' motion for leave to file a surreply (ECF 28) was granted. ECF 29. The surreply is docketed at ECF 30.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I. Factual and Procedural Background[2]

Taylorson became a member of the Plumbers and Steamfitters Local 486 Union (the "Union") in November 1979, through which he became a participant in the Plan. ECF 1, ¶¶ 74, 77.[3] He remained a member of the Union until June 2009, when he retired from Union employment. *Id.* ¶ 76. While a member of the Union he installed, maintained, and repaired HVAC and refrigeration systems. *Id.* ¶ 75. Taylorson, who was born in 1954 (ECF 24-4 at 10), became eligible for a service retirement in May 2009. ECF 1, ¶ 79.

Chavis became a member of the Union in April 1982, through which he also became a participant in the Plan. ECF 1, ¶¶ 20, 22. Like Taylorson, Chavis's Union work was mechanical in nature, involving installation, repair, and replacement of HVAC and refrigeration systems. *Id.* ¶ 21. Chavis, who was born in 1956 (ECF 24-3 at 132), became eligible for service retirement

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I shall also refer to facts supported by the exhibits submitted with the Complaint.

[3] Plaintiffs consistently use "on or around" when referring to dates in their Complaint. For the purposes of this Memorandum Opinion, I shall omit such language.

under the Plan in October 2011. *Id.* ¶ 28. He retired from Union employment on October 29, 2011. *Id.* ¶ 32.

Through the Plan, plaintiffs accrued vested benefits for each "Hour of Service" they worked. *Id.* ¶¶ 22-24. An "Hour of Service" is defined in Section 1.15 of the Plan as each hour for which: (1) "an Employee is paid, or entitled to payment for the performance of duties in Covered Employment;" (2) "an Employee is paid or entitled to payment . . . [for] a period of time in which no duties are performed . . . due to vacation, holiday, illness, incapacity, . . . layoff, jury duty, military duty or leave of absence . . .;" or (3) "back pay, . . . is either awarded or agreed to by the Employer." ECF 1, ¶ 24.

Plaintiffs contend that, under the terms of the Plan, their retirement benefits are governed by the terms in effect at the time of their retirement. *Id.* ¶¶ 36, 88. Therefore, they allege that the operative Plan is the Plumbers and Steamfitters Local 486 Pension Plan, As Amended and Restated January 1, 2009. *Id.*

As noted, as of May 2009, Taylorson was eligible for a "Service Retirement" under the Plan, which he defines as an "unreduced retirement." *Id.* ¶ 79. Around that time, he was offered a non-Union management position by Johnson Controls International PLC ("Johnson Controls"). *Id.* ¶ 78. Before Taylorson retired from Union employment, and before accepting other employment, he asked defendants Troll and Hayes, two fiduciaries of the Plan,[4] if his Plan benefits would be affected if he were to work in a non-Union management position. *Id.* ¶ 80. Troll and Hayes allegedly told Taylorson that such work would have no impact on his entitlement to Plan benefits. *Id.* ¶ 81.

Following Taylorson's retirement from Union employment on June 1, 2009, Taylorson began working for Johnson Controls in a non-Union management position. *Id.* ¶¶ 82-83.

---

[4] Hayes is also a member of the Plan's Board of Trustees. ECF 1, ¶ 13.

Thereafter, on June 11, 2009, Taylorson applied for retirement benefits under the Plan and his application was approved on August 27, 2009. *Id.* ¶¶ 85-86. Taylorson began receiving pension payments under the Plan on September 1, 2009. *Id.* ¶¶ 87, 139.

Similarly, around the time that Chavis became eligible for "Service Retirement" under the Plan, Chavis was also offered a non-Union management position at Johnson Controls. *Id.* ¶ 27. Chavis spoke to defendants Troll and Hayes before accepting Johnson Controls' offer, and was informed that working in a non-Union position would not jeopardize his Plan benefits, which he defines as an "unreduced retirement benefit." *Id.* ¶¶ 28-30.

Upon Chavis's retirement from Union employment on October 29, 2011, he accepted Johnson Controls' non-Union management position. *Id.* ¶¶ 31-32. On October 31, 2011, Chavis applied for his pension under the Plan and his application was approved on December 29, 2011. *Id.* ¶¶ 34-35. Chavis began receiving pension benefits under the Plan on January 1, 2012. ECF 1, ¶¶ 37, 139.

On September 28, 2012, Kimberly Bradley, Esq., counsel for the Plan, sent "materially identical" letters to each plaintiff (the "Suspension Letters"), stating that their Plan benefits would be suspended. *Id.* ¶¶ 38, 89. As to Chavis, Bradley wrote, ECF 1, ¶ 38:

> [T]he Internal Revenue Code provides that a retiree who is younger than age 62 must have a 'bona fide retirement' in order to receive pension benefits from a qualified plan. 26 USC § 401(a). The IRS requires that in order to receive a distribution from a qualified plan, you 'must have experienced a bona fide termination of employment in which the employer/employee relationship is *completely severed*.' IRS Information No. 2000-0245. (Emphasis in original).

The Suspension Letter to Taylorson also said, *id.* ¶ 106: **"The Pension Fund must suspend your pension benefits until you reach age 62** or permanently terminate all employment with your current employer." (Bold in Complaint).

Taylorson turned 62 in February 2016. *Id.* ¶ 108. To my knowledge, as of the time suit was filed, it does not appear that Chavis had turned 62 years of age.

The Suspension Letters sent to plaintiffs also outlined the procedure to appeal suspension decisions, and stated that any appeal would be considered "at the next scheduled meeting of the Trustees following . . . receipt of [the] appeal." *Id.* ¶¶ 50, 101. On October 30, 2012, Taylorson appealed the suspension of his benefits. *Id.* ¶¶ 100, 131. On November 19, 2012, Chavis appealed the suspension of his benefits. *Id.* ¶ 49. Both appeals were timely filed. *Id.* ¶¶ 49, 54, 100.

In November 2015, after not receiving a decision regarding his appeal in over three years, Taylorson sent a letter to the Plan requesting immediate reinstatement of his benefits. He also provided notification that he would reach the age of sixty-two on February 10, 2016. *Id.* ¶¶ 103-04, 108. Defendant Talerico, a Plan fiduciary, responded on November 12, 2015, denying the request for reinstatement because Taylorson was engaged in "Unauthorized Employment." *Id.* ¶ 105.

The 2009 Plan defines "Unauthorized Employment" in Section 7.06. *Id.* ¶¶ 43, 94. A person is engaged in unauthorized employment when

> a Pensioner in such month or in such payroll period ending in a month completes 40 or more Hours of Service in: (i) an industry in which Employees covered by the Plan were employed and accrued benefits under the Plan as a result of such employment at the time that he or she reached Normal Retirement Age or retired, if earlier; (ii) a trade or craft in which the Participant or Pensioner was employed at any time under the Plan; and (iii) the geographic area covered by the Plan at the time he or she reached Normal Retirement Age or retired, if earlier.

Talerico attached copies of sections 7.06 and 7.07 of the 2016 Plan document. ECF 1, ¶ 105. The 2016 Plan language regarding "Unauthorized Employment" does not appear to be materially different from the provision in the 2009 Plan. However, as noted, plaintiffs maintain

that they are subject to the 2009 Plan, and not the 2016 Plan. Accordingly, plaintiffs assert that the 2016 Plan is irrelevant to their benefits, and by attaching the 2016 Plan, Talerico misrepresented the terms of the governing Plan. *Id.*

Defendant Troll sent a letter to Taylorson, on February 22, 2016, notifying him that the Board of Trustees had denied his appeal of October 20, 2012, on the ground that he was engaged in unauthorized employment. *Id.* ¶¶ 110-13. Plaintiffs assert that the denial again referenced language that is only found in the 2016 Plan, which is inapplicable to plaintiffs' appeals, as their appeals are subject to the 2009 Plan. *Id.* ¶¶ 112, 113.

During the time in which Chavis waited for a response to his appeal, he periodically requested a status update from the Plan fiduciaries. *Id.* ¶ 52. Each time he asked for the update, he was told that the Board of Trustees was still considering his appeal. *Id.* ¶ 53. On March 23, 2017, the Board of Trustees denied Chavis's appeal, and he was notified of the denial on April 4, 2017. *Id.* ¶¶ 54-55. The denial states, *id.* ¶ 58:

> [T]he Trustees have not made a determination regarding the work that you are performing and whether it constitutes unauthorized employment under the terms of the Plan, because the requirements of the Internal Revenue Code do not permit you to receive a distribution prior to Normal Retirement Age if you have not incurred a bona fide retirement.

This suit followed.

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion

by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle

only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting Forst, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents expressly incorporated by reference into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004). Moreover, the documents attached to a motion to dismiss need not be supported by a declaration of authentication. *Six*, 891 F.3d 512-13; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also consider a document submitted by the movant, even if it was not attached to or expressly incorporated in a complaint. However, the document must be "integral to the complaint" and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

Defendants have submitted with their motion the Suspension Letter and appeal denial letters that defendants sent to Taylorson and Chavis. *See* ECF 24-3 to 24-4. These documents were incorporated into plaintiffs' Complaint. *See* ECF 1, ¶¶ 38-39, 42-43, 50-51, 55-58, 64-65, 70, 89-90, 93-94, 101-02, 106, 110-11, 116. Accordingly, in evaluating defendants' Motion, I may consider these documents.

**II. Plaintiffs' Causes of Action**

Plaintiffs assert claims under ERISA §§ 502(a)(1)(B), 502(a)(2), and 502(a)(3).[5]  ECF 1,

¶¶ 136-71.  At this stage of litigation it is premature to discuss the merits of each claim.

However, I shall recount plaintiffs' claims by way of background.

**A. ERISA § 502(a)(1)(B)**

Under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), "a plan participant

may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

plan.'"  *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (quoting 29 U.S.C.

§ 1132(a)(1)(B)).

To establish a claim of wrongful denial of benefits, a plaintiff must show one of two

things.  *See Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 340-

41 (4th Cir. 2000).  "'If the plan [does] not give the employer or administrator discretionary or

final authority to construe uncertain terms,'" a plaintiff must show that he is entitled to benefits

based on "'the terms of the plan and other manifestations of the parties' intent.'"  *Id.* (alteration

in *Booth*) (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989)).

Alternatively, "'[w]here discretion is conferred upon the trustee with respect to the exercise of a

power,'" a plaintiff must prove that there was "'an abuse by the trustee of his discretion.'"

*Booth*, 201 F.3d at 341 (quoting *Firestone*, 289 U.S. at 111).

In Count I of the Complaint, plaintiffs allege that they are entitled to retirement benefits

under the 2009 Plan.  ECF 1, ¶ 137.  Plaintiffs maintain that they "retired and properly filed []

claim[s] for their Plan benefit entitlement" and were approved for benefits, and then "[t]he Board

---

[5] I refer to ERISA § 502 and 29 U.S.C. § 1132 interchangeably, as the latter is the codification of the former.

- 11 -

of Trustees wrongfully suspended each Plaintiff's Plan benefit entitlement." *Id.* ¶¶ 138-140. They contend that the Suspension Letters "wholly misrepresent[] the facts and law . . ." ECF 1, ¶¶ 39, 90.

First, plaintiffs assert that the Suspension Letters do not identify the provisions of the applicable Plan. *Id.* ¶¶ 40, 91. Plaintiffs contend that the Plan's claims procedure requires that the letters "identify the Plan provisions on which the denial is based," and the letters here do not refer to any Plan provision. *Id.* ¶¶ 41-42, 65, 92-93.

According to plaintiffs, the "2009 Plan document only permits the suspension of a 2009 Plan participant's benefit if that participant engages in 'Unauthorized Employment.'" *Id.* Plaintiffs maintain that their non-Union management positions are "not in the same 'trade or craft' as any of [their] Union employment," and thus they have not completed any Hours of Service since retirement. *Id.* ¶¶ 44-47, 91-93. Because they have not completed any Hours of Service, plaintiffs claim that defendants had no basis to suspend their benefits. *Id.* ¶¶ 48, 99.

In addition, plaintiffs allege that through the appeals process, defendants "and the Plan have wrongfully denied [their] Plan benefit entitlements in violation of the terms of the 2009 Plan provisions and ERISA." ECF 1, ¶ 143. According to plaintiffs, defendants used the incorrect version of the Plan to deny Taylorson's appeal. *Id.* ¶¶ 115-117. They also maintain that Chavis's appeal denial "not only failed to reference specific Plan provisions upon which the denial is based, [but] it attached Plan provisions that have no relevance to Plaintiff Chavis's Plan benefit." *Id.* ¶ 56.

Plaintiffs assert that the claims procedure used by defendants did not follow the proper "Claims Procedure Regulation," and was "not a 'reasonable claims procedure.'" *Id.* ¶¶ 60-72, 128-35. And, plaintiffs maintain that defendants failed to "reference a single 2009 Plan

provision" in either their suspension or appeal denial letters, in violation of ERISA's Claims Procedure. *Id.* ¶¶ 63-65.

## B. ERISA § 502(a)(2)

Under ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), "[a] civil action may be brought--by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." The statute provides, 29 U.S.C. § 1109(a), ERISA § 409:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

To assert "a claim for breach of fiduciary duty under ERISA, [a] plaintiff must allege: (1) that the defendant was a fiduciary, (2) who was acting within his fiduciary capacity, and (3) breached his duty." *Guardian Life Ins. Co. of America v. Reinaman*, WDQ-10-1374, 2011 WL 2133703, at *7 (D. Md. May 28, 2011) (quoting *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 494 (D. Md. 2010)). Notably, although an individual may bring a claim using § 502(a)(2), only the plan as a whole, and not an individual beneficiary, is entitled to relief under this section of ERISA. *Mass. Mut Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 (2008); *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013).

In Counts II and IV of their Complaint, plaintiffs allege that defendants breached the fiduciary duty they owed to plaintiffs. ECF 1, ¶¶ 148-50, 162-64. In particular, plaintiffs contend that defendants breached their fiduciary duty by: (1) "failing to administer the 2009 Plan in accordance with its terms;" (2) "misrepresenting the terms of the 2009 Plan to [p]laintiffs;" (3)

"failing to administer the 2009 Plan solely in the interests of the Plan participants and beneficiaries;" (4) failing to administer the 2009 Plan for the exclusive purpose of providing Plan benefits to participants; and" (5) "denying [p]laintiff Chavis and [p]laintiff Taylorson their 2009 Plan benefit entitlement." *Id.* ¶¶ 150. Plaintiffs also assert that defendants Hayes and Troll breached their fiduciary duty by providing misinformation that "[p]laintiffs Chavis' and Taylorson's working in non-Union management positions with Johnson Controls would have no impact on their Plan benefits." *Id.* ¶ 164.

### C. ERISA § 502(a)(3)

Section § 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3), serves as a "catchall," offering "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). It provides, 29 U.S.C. § 1132(a)(3):

> A civil action may be brought—
> * * *
> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
> which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief (i) to redress such violations
> or (ii) to enforce any provisions of this subchapter or the terms of the
> plan . . . .

To establish a violation of § 502(a)(3), a plaintiff must show that there was a violation of an ERISA provision, and the relief sought constitutes "appropriate equitable relief." *See Pender v. Bank of Am. Corp.*, 788 F.3d 354, 363-64 (4th Cir. 2015). "The Supreme Court has interpreted the term 'appropriate equitable relief,' as used in Section 502(a)(3), to refer to 'those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity.'" *Id.* at 364 (emphasis in original) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011)) (internal citations omitted). However, both the Supreme

Court and Fourth Circuit have concluded that relief under § 502(a)(3) is available only if a plaintiff's relief under ERISA's other remedial provisions would otherwise be inadequate. *See Korotynska*, 474 F.3d at 105; *Varity*, 516 at 512.

In Counts III and V of the Complaint, plaintiffs seek various forms of equitable relief under § 502(a)(3), including the imposition of an equitable lien and a constructive trust on the Plan benefits and assets. ECF 1, ¶¶ 159, 177. Additionally, plaintiffs seek to enjoin defendants "from acting as a fiduciary of any ERISA-governed benefit plan." *Id.*

### IV. Discussion

Defendants present three arguments in support of their Motion to Dismiss. First, defendants contend that plaintiffs' claims are time-barred. ECF 24-1 at 14-16. Second, defendants assert that plaintiffs' claims under §§ 502(a)(2) and 502(a)(3) fail as a matter of law. ECF 24-1 at 16-19. According to defendants, plaintiffs cannot make a claim under § 502(a)(2) because they seek relief for themselves rather than on behalf of the Plan. *Id.* Further, defendants argue that plaintiffs may not assert a claim under § 502(a)(3) because they could obtain adequate relief under §§ 502(a)(1)(B) and 502(a)(2). *Id.* Finally, defendants claim that the decision to suspend plaintiffs' benefits until they either "ceased employment with the employer under which they accrued their benefit under the Plan" or reached the age of 62 was reasonable and consistent with the Internal Revenue Code. ECF 24-1 at 22.

### A. Statute of Limitations

### 1. Claim for Breach of Fiduciary Duty

Defendants contend that plaintiffs' claims under §§ 502(a)(2) and 502(a)(3) are subject to a three-year limitations period that accrued on "the earliest date on which [] plaintiff[s] had actual knowledge of the breach or violation." ECF 24-1 at 14 (quoting ERISA § 413, 29 U.S.C.

§ 1113). Further, defendants assert that by March 5, 2013, plaintiffs had "knowledge of all materials [sic] facts necessary to understand that an ERISA fiduciary ha[d] breached his or her duty or otherwise violated the Act." *Id.* at 16. Therefore, "under ERISA's Claims Procedures, they were likewise able to file suit by March 5, 2013," and the claim accrued on that date. *Id.* Because plaintiffs did not file suit until September 25, 2017, more than three years after March 5, 2013, defendants insist that the claims are time-barred. *Id.*

Defendants are correct that the statute of limitations for a claim of breach of fiduciary duty is governed by ERISA § 413, 29 U.S.C. § 1113. But, they are incorrect that the applicable statute of limitations here is three years.

Section 413 of ERISA (29 U.S.C. § 1113) "creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 660 (4th Cir. 2009) (citing *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996)). As plaintiffs correctly state, although the three-year statute was formerly "triggered by either actual knowledge or constructive knowledge[,] Congress amended the statute in 1987 to require, at a minimum, 'actual knowledge of the breach or violation.'" ECF 30 at 10 (quoting *Browning*, 313 F. App'x at 660).

The Fourth Circuit has emphasized "that 'actual knowledge must be distinguished from constructive knowledge,'" and the existence of actual knowledge "depends largely on the 'complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation.'" *Browning*, 313 F. App'x at 661 (alterations in original) (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992)). In

*Browning*, the Court found actual knowledge when there was a non-complex transaction, non-complex legal claim, and the alleged violation was egregious. *See Browning*, 313 F. App'x at 662.

To my knowledge, the Fourth Circuit has not precisely defined the concept of actual knowledge. However, it has said that "the appropriate inquiry is fact-intensive." *Id.* at 661. Additionally, "there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'the essential facts of the transaction or conduct constituting the violation.'" *Id.* (quoting *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (4th Cir. 2009)). Therefore, to trigger the three-year statute, defendants must be able to show that plaintiffs had actual knowledge of the essential facts that constituted a breach of fiduciary duty. Otherwise, the applicable statute is six years.

Defendants assert that plaintiffs had actual knowledge of a fiduciary breach by looking at three separate allegations made by plaintiffs. First, defendants argue that according to the Claims Procedure for ERISA, 29 C.F.R. § 2560.503-1(l)(1)—which plaintiffs cite in their Complaint as setting forth the requirements of claims for benefits—if a denial is not timely furnished, plaintiffs are "entitled to pursue any available remedies under section 502(a) . . ." ECF 24-1 at 16 (quoting 29 CFR § 2560.503-1(l)(1)). Plaintiffs also stated that the latest date the Board of Trustees could decide on their benefits appeal was at the Board of Trustees meeting in February 2013. ECF 24-1 at 15-16 (citing ECF 1, ¶¶ 66-67, 130-32). Finally, plaintiffs alleged that they were entitled to a notification of the Board's decision within five days of a determination, but that they did not receive such a determination. ECF 24-1 at 16 (citing ECF 1, ¶¶ 69-70, 133). Based on these three assertions, defendants maintain that plaintiffs would have

had actual knowledge of a breach of fiduciary duty by March 5, 2013. *See* ECF 24-1 at 16. Therefore, defendants insist that the three-year limitations period ran from that date. *See id.*

As plaintiffs accurately state, the court may not consider an affirmative defense at the motion to dismiss stage, other than in "relatively rare circumstances." *Goodman*, 494 F.3d at 464. The court may only do so "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (alteration in original) (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

From the allegations of the Complaint, I cannot conclude as a matter of law that plaintiffs had actual knowledge of an alleged fiduciary breach as of March 5, 2013. Therefore, at this juncture, the applicable statute for plaintiffs' claim is "six years after [] the date of the last action which constituted a part of the breach or violation." ERISA § 413; 29 U.S.C. § 1113. On September 28, 2012, plaintiffs' benefits were first suspended. On the basis of the Complaint, this claim appears to have been timely filed.[6]

### 2. Claim for Denial of Benefits

Plaintiffs assert a claim under § 502(a)(1)(2) for denial of benefits, which defendants contend is time-barred. ECF 24-1 at 16. They argue that plaintiffs had three years to file suit from March 5, 2013, or the date that plaintiffs had "knowledge of all materials [sic] facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Id.* at 15-16. In response, plaintiffs argue that the limitations period did not accrue until they were issued final denials of their benefit claim appeals. ECF 25-1 at 12. Because final denials were not issued until February 22, 2016 (for Taylorson's appeal) and April

---

[6] Plaintiffs also assert that a six-year limitations period should apply because of defendants' purported fraudulent concealment. ECF 25-1 at 13-14. In light of my conclusion concerning actual knowledge, I need not address this contention.

4, 2017 (for Chavis's appeal), plaintiffs maintain that they timely filed suit on September 13, 2017.

Both sides agree that claims for denial of benefits under ERISA "contain[] no specific statute of limitations, and [the Court] therefore look[s] to state law to find the most analogous limitations period." *Bond v. Marriott Int'l, Inc.*, 637 F. App'x 726, 731 (4th Cir. 2016) (citing *White v. Sun Life Assurance Co.*, 488 F.3d 240, 245 (4th Cir. 2007). The Fourth Circuit has ruled "'that Maryland's three-year statute of limitations for contract actions applies'" to ERISA denial of benefits claims, as it is the most analogous. *Bond*, 637 F. App'x at 731. Moreover, the Fourth Circuit has said that in most cases "[a]n ERISA cause of action does not accrue until a claim has been made and formally denied." *Id.* (alteration in original) (quoting *Rodriguez v. MEBA Pension Tr.*, 872 F.2d 69, 72 (4th Cir. 1989)).

Thus, outside of rare circumstances where application of the formal denial rule would be "tricky," courts must consider the date of a formal denial as the accrual date. *Bond*, 637 F. App'x at 731 (finding that application of the formal denial rule was "tricky" because no formal denial was ever issued, so a lawsuit was filed before the claim had accrued; further, plaintiffs waited more than thirty years to file suit); *see also Cotter v. E. Conference of Teamsters Ret. Plan*, 898 F.2d 424, 429 (4th Cir. 1990) (finding application of the formal denial rule to be "tricky" because no formal denial was issued, and applying the rule "would lead [] to the anomalous result that the statute of limitations on [the] claim did not begin to run until after [the] lawsuit was filed").

This case is not "tricky." A formal denial was issued to Taylorson on February 22, 2016, and to Chavis on April 4, 2017. ECF 1, ¶¶ 54-55, 110. Because formal denials were issued to

both plaintiffs, I shall follow the formal denial rule. Under the rule, plaintiffs were required to file suit within three years of the date of their formal denial. *See Bond*, 637 F. App'x at 731.

Plaintiffs' Complaint was filed on September 13, 2017, which is well within three years of the denials. *See* ECF 1. Therefore, plaintiffs' claims for denial of benefits are not time-barred.

## B. Relief Under § 502(a)(2)

Defendants argue that plaintiffs' claims under ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), should be dismissed because relief under this section can only be granted to the Plan as a whole, but plaintiffs' claims seek individual relief. ECF 24-1 at 17-18. In their Reply, defendants further contend that plaintiffs cannot show the Plan suffered a loss, and the form of relief sought by plaintiffs is inappropriate, providing further grounds for dismissal. ECF 27 at 9-10.

As stated, ERISA § 502(a)(2) provides a cause of action for breach of fiduciary duty. Although an individual may bring a claim under § 502(a)(2), only the plan as a whole, and not an individual beneficiary, is entitled to relief under this provision. *Russell*, 473 U.S. at 140; *LaRue*, 552 U.S. at 250; *David v. Alphin*, 704 F.3d 327, 332 (4th Cir. 2013). A claim for individual relief under § 502(a)(2) is impermissible because "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256; *see Russell*, 473 U.S. at 140.

However, it appears that plaintiffs seek relief on behalf of the Plan. Indeed, they explicitly ask this Court to grant relief to Chavis and Taylorson, "*on behalf of the Plan*." *See, e.g.*, ECF 1 at 37 (emphasis added). Additionally, the remedy sought by plaintiffs is not only for

plaintiffs. They seek to bar each defendant from "ever acting as a fiduciary of any ERISA-covered plan." *Id.* at 36.

In *Russell*, 473 U.S. at 142, the Supreme Court stated: "Congress specified that this remedial phrase includes 'removal of such fiduciary'—an example of the kind of 'plan-related' relief . . . ." If the fiduciaries are found to have breached their duties, removal would likely serve to "'protect the entire plan, rather than [only] the rights of an individual beneficiary.'" *LaRue*, 552 U.S. at 252 (quoting *Russell*, 473 U.S. at 142) (alteration added).

Moreover, plaintiffs have not merely requested damages under § 502(a)(2). *See LaRue*, 552 U.S. at 254, 256 (concluding that a plaintiff cannot merely seek consequential damages under § 502(a)(2), but can seek relief for a breach that impairs the value of their individual account, and thus the value of total plan assets); *Varity*, 516 U.S. at 509 (stating that in *Russell*, the Court prohibited plaintiffs from recovering compensatory and punitive damages under § 502(a)(2)); *Russell*, 473 U.S. 148 (concluding that an individual was not permitted to seek extra-contractual damages under § 502(a)(2), because damages paid to one person is an individual recovery). In viewing plaintiffs' Complaint, there is nothing to suggest that plaintiffs seek only individual relief, instead of relief on behalf of the Plan as a whole.

In their Reply, defendants introduce a new argument: Plaintiffs cannot show that the Plan as a whole suffered harm, so their claims under § 502(a)(2) should be dismissed. *See* ECF 27 at 9. Although claims under § 502(a)(2) allow recovery for breaches that harm a plan as a whole, defendants cite no authority requiring plaintiffs to show harm or loss or providing a standard of "harm" that plaintiffs are required to meet. At this stage, plaintiffs have adequately alleged a breach of fiduciary duty. *See, e.g.*, *Reinaman*, 2011 WL 2133703, at *7; *Cuthie*, 743 F. Supp. 2d at 494.

Finally, in their Reply, defendants suggest that the relief requested by plaintiffs is "a draconian remedy," for which they have offered no basis. ECF 27 at 10. This argument is without merit. ERISA § 409 (29 U.S.C. § 1109(a)) explicitly states that a fiduciary who breaches his duty "shall be subject to such other equitable or remedial relief as the court may deem appropriate, *including removal of such fiduciary*." (Emphasis added). Further, although posed as a hypothetical, the Supreme Court in *Russell* suggested that "[i]f [a] plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations, respondent in this hypothetical could have asked for removal of the fiduciary . . . ." *Russell*, 473 U.S. at 147.

Moreover, the Fourth Circuit has also ruled that removal is an appropriate remedy in claims of repeated fiduciary breach. *Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006) (finding that "the district court was right to remove [defendants] as fiduciaries" because defendants "continually acted in an objectively unreasonable manner that conflicted with their duties of loyalty and care"); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 n.6 (4th Cir. 1996) (stating that "[r]emoval of trustees is appropriate when the trustees have engaged in repeated or substantial violations of their fiduciary duties").

Because removal of a fiduciary is a form of relief, plaintiffs may seek removal of the individual defendants. Accordingly, I decline to dismiss plaintiffs' claims under § 502(a)(2).

### C. Relief Under § 502(a)(3)

Defendants seek dismissal of plaintiffs' claim under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)), because plaintiffs also seek relief under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), and they contend that duplicate relief is impermissible. ECF 24-1 at 18-19.

The law is clear that a plaintiff may not simply claim denial of benefits under § 502(a)(1)(B), then "repackage" that claim as one for breach of fiduciary duty under § 502(a)(3). *Varity*, 516 U.S. at 513-15. However, where a plaintiff's remedy would be inadequate under § 502(a)(1)(B), that plaintiff is also entitled to seek simultaneous relief under § 502(a)(3). The paradigmatic case is one in which a plaintiff seeks individualized relief, but is no longer a member of the plan. *See Varity*, 516 U.S. at 515.

As noted, in viewing claims under § 502(a)(3), the Supreme Court and the Fourth Circuit have "concluded that the provision creates a 'catchall' which 'act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.'" *Korotynska*, 474 F.3d at 105 (alterations in original) (quoting *Varity*, 516 U.S. at 512). Further, "§ 1132(a)(3) authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." *Korotynska*, 474 F.3d at 105 (citing *Varity*, 516 U.S. at 512, 515). "The question under *Varity*, then, is whether the claimant's injury is addressed by ERISA's other provisions and whether those provisions afford adequate relief. If so, equitable relief under § 1132(a)(3) will normally not be 'appropriate.'" *Korotynska*, 474 F.3d at 105 (quoting *Varity*, 516 U.S. at 515).

On its face, this guidance would seem to bar plaintiffs' claims. However, plaintiffs contend that, following *CIGNA Corp. v. Amara*, 563 U.S. 541 (2011), the "legal landscape of ERISA § 502(a)(3) completely changed." ECF 25-1 at 20. In *Amara*, the district court granted relief to the plaintiff under § 502(a)(1)(B), by reforming CIGNA's plan and ordering CIGNA to pay benefits to the plaintiff. *Amara*, 563 U.S. at 425. The issue decided by the Supreme Court on *certiorari* was whether plan reformation, an equitable remedy, was available under

§ 502(a)(1)(B).  *Id.*  The Supreme Court concluded that such a remedy was not available under § 502(a)(1)(B), but may instead be available under an "equity-related ERISA provision," such as § 502(a)(3).  *Id.*  The case was remanded to the district court to determine whether such a remedy would be available under § 502(a)(3).  *Id.* at 445.

In their Opposition, plaintiffs contend that the *Amara* Court "'addressed the issue'" of whether simultaneous claims could be brought "'in terms of available relief and did not say that plaintiffs would be barred from initially bringing a claim under the § 1132(a)(3) catchall provision simply because they had already brought a claim under the more specific portion of the statute, § 1132(a)(1)(B).'"  ECF 25-1 at 20 (quoting the Eighth Circuit's discussion of *Amara* in *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711 727 (8th Cir. 2014)).  Moreover, plaintiffs maintain that the Fourth Circuit "has not had the opportunity to issue an opinion specifically addressing the permissibility of simultaneously pursuing claims under ERISA §§ 502(a)(1)(B) and 502(a)(3) post-*Amara*.  However, it appears that the Fourth Circuit impliedly agrees that *Amara* permits participants to simultaneously pursue claims . . ."  ECF 25-1 at 21.

In my view, it does not appear that *Amara* has abrogated the precedent set forth by the Supreme Court in *Varity*, and followed by the Fourth Circuit in *Korotynska*.  "With one possible exception, courts have consistently held that *Amara* and it's [sic] progeny did not alter the rule announced in *Varity*."  *Leach v. AETNA Life Ins. Co.*, WMN-13-2757, 2014 WL 470064, at *4 (D. Md. Feb. 5, 2014) (collecting post-*Amara* district court cases).

Nowhere in *Amara* did the Court state that a plaintiff is entitled to pursue simultaneous relief under §§ 502(a)(1)(B) and 502(a)(3) if relief under the former is adequate.  The Supreme Court only noted that when no other adequate relief exists, a plaintiff may turn to § 502(a)(3) "'to obtain other *appropriate equitable relief* . . .'"  *Amara*, 563 U.S. at 438 (emphasis in

original) (quoting 29 U.S.C. § 1132(a)(3)). Both *Korotynska* and *Varity* also allow for equitable relief under § 502(a)(3), so long as that relief is not available elsewhere. "While *Amara . . .* may have expanded the kinds of equitable remedies available under § 502(a)(3), those remedies are still only available when adequate relief for a beneficiary's injury is not available elsewhere." *Leach*, 2014 WL 470064, at *4.

As defendants observe in their Reply, the Fourth Circuit has explicitly weighed in on this issue in a post-*Amara* case. In *Savani v. Wash. Safety Mgmt. Sols., LLC*, 474 F. App'x 310 (4th Cir. 2012), the Fourth Circuit briefly addressed the issue of simultaneous claims made under § 502(a)(1)(B) and § 502(a)(3). *Id.* at 313 n.2. The Court stated that "[t]he district court also properly dismissed count two on the grounds that *a party may not request simultaneous relief under both ERISA, § 502(a)(1)(B) and § 502(a)(3)*," pursuant to *Korotynska*. *Id.* (emphasis added). As shown in *Savani*, the Fourth Circuit continues to follow the precedent set forth in *Korotynska*, even post-*Amara*. Therefore, I will follow *Korotynska*, as well. Accordingly, plaintiffs are only permitted to seek relief under § 502(a)(3) if the remedy they seek under § 502(a)(1)(B) and § 502(a)(2) is inadequate.

Under § 502(a)(1)(B), plaintiffs seek relief, claiming that (1) they "are entitled to their Plan benefit entitlements under the terms of the 2009 Plan," and (2) defendants must pay plaintiffs their "benefit entitlement retroactive to the date [their] Plan benefit entitlement was suspended, plus pre-judgment interest." ECF 1 at 35. Under § 502(a)(2), plaintiffs seek relief enjoining each defendant "from ever serving as a fiduciary of any ERISA governed benefit plan." *Id.* at 35-37. Plaintiffs then seek relief pursuant to § 502(a)(3). *Id.* at 36-38.

Although the relief requested under § 502(a)(3) may be articulated differently, the claims for relief are a mere "repackaging" of the relief already requested by plaintiffs under different

sections of ERISA. Plaintiffs' claims under § 502(a)(3) essentially request two things. First, relief in the form of monetary damages, and second, relief through removal of the individual defendant fiduciaries. *See id.* at 36-38.

Under § 502(a)(1)(B), plaintiffs have already requested that this Court enforce the proper ERISA Plan and allow plaintiffs to recover their benefits, along with any interest or damages that plaintiffs are owed. ECF 1 at 35. If successful on this claim, plaintiffs would be fully compensated for their damages and any Plan losses, and would not face an inadequate legal or monetary remedy. Under § 502(a)(2), plaintiffs again requested removal of defendants as fiduciaries. ECF 1 at 35-37. If plaintiffs are successful under this claim, they would have no need for their duplicate claim under § 502(a)(3).

Because "plaintiff[s'] injury finds adequate relief in another part of ERISA's statutory scheme," a cause of action is inappropriate and unnecessary under § 502(a)(3). *See Korotynska*, 474 F.3d at 105 (quoting *Varity*, 516 U.S. at 512, 515). Accordingly, plaintiffs' claims under § 502(a)(3) are subject to dismissal.

### D. Unauthorized Employment

Defendants' final contention is that the Trustees' decision to suspend plaintiffs' benefits was reasonable and consistent with the Internal Revenue Code, as plaintiffs were engaged in unauthorized employment and had not yet reached the age of 62. ECF 24-1 at 22-23. However, defendants fail to point to any allegation in the Complaint that supports the conclusion that plaintiffs were engaged in unauthorized employment.

As stated above, in reviewing a Rule 12(b)(6) motion the Court must consider the facts alleged in the Complaint. Plaintiffs expressly allege that defendants confirmed that their employment was permissible, and would have no impact on their ability to claim retirement

benefits. ECF 1, ¶¶ 30, 80. Under Rule 12(b)(6), this Court must accept the facts set out in the Complaint as true. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. Because nothing in the Complaint suggests that plaintiffs were engaged in unauthorized employment, this argument is without merit.

## V. Conclusion

For the aforementioned reasons, defendants' Motion is granted in part and denied in part. Specifically, the Motion shall be denied as to Counts I, II, IV, and VI, and granted as to Counts III and V.

A separate Order follows.


Date:  August 23, 2018                                         _____/s/_____
                                                                            Ellen Lipton Hollander
                                                                            United States District Judge