IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL CHAVIS ET AL.,                    *
                                          *
        Plaintiffs,                       *
                                          *
v.                                        *        Civil Case No. 1:17-cv-02729-ELH
                                          *
PLUMBERS & STEAMFITTERS LOCAL             *
486 PENSION PLAN ET AL.,                  *
                                          *
        Defendants.                       *
                                          *

*************

## MEMORANDUM OPINION

On September 13, 2017, Michael Chavis and Stanley Taylorson, Jr. (collectively, "Plaintiffs") filed suit against the Plumbers and Steamfitters Local 486 Union's Pension Plan ("the Plan") and members of the Plan's Board of Trustees ("the Board") (collectively "Defendants"). (ECF No. 1). Plaintiffs brought six claims for relief under the Employment Retirement Income Security Act of 1974 ("ERISA"). *Id.* In addressing an earlier dispositive motion (ECF No. 33), Judge Hollander summarized the basis for these claims as Plaintiffs' assertion that their benefits were wrongfully suspended when Defendants erroneously concluded that Plaintiffs pursued "unauthorized employment" post-retirement, such that their benefits could not resume until they reached age 62 or until their unauthorized employment terminated, pursuant to certain IRS provisions linking benefits to "bona fide retirement." (ECF No. 33 at 4–6).

This case was referred to me for discovery and related scheduling matters.[1] I have reviewed Defendants' Motion for Protective Order, Plaintiffs' Cross-Motion to Compel Discovery, and the related Oppositions and Replies thereto. (ECF Nos. 57–60). The Court also

---

[1] On August 27, 2019, this case was referred to then-Magistrate Judge Gallagher for all discovery and related scheduling. (ECF No. 62). On September 18, 2019, it was reassigned to Magistrate Judge J. Mark Coulson.

1

held a brief conference call with Counsel on September 25, 2019 to discuss the pending discovery dispute. On both Motions, I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion for Protective Order and Plaintiffs' Motion to Compel Discovery each will be GRANTED IN PART and DENIED IN PART.

## I.     FACTUAL BACKGROUND

Plaintiffs allege that they are members of the Plumbers and Steamfitters Local 486 Union ("the Union") and participants in the Union's Pension Plan. (ECF No. 1 ¶¶ 1–2, 20, 74). Each Plaintiff claims that, after retiring from Union employment, the Defendant-Board initially approved their applications for pension benefits under the Plan, but later suspended those benefits wrongfully. *Id.* ¶¶ 28–32, 38–43, 80–82, 89–94. Plaintiffs also allege that the claims procedures they encountered in their appeals process were not "reasonable" under the Plan's terms, and therefore the Board's decisions are "entitled to no deference." *Id.* ¶¶ 71–72, 134–35.

Plaintiffs brought six claims for relief under ERISA. *Id.* ¶ 18. Defendants moved to dismiss all claims. (ECF No. 24). Judge Hollander dismissed two of Plaintiffs' claims on August 23, 2018 upon Defendants' Motion to Dismiss. (ECF No. 34). Plaintiffs' remaining claims seek to: (1) recover benefits due, and enforce rights, under the Plan (*Id.* ¶¶ 136–45); (2) remove members of the Board of Trustees because they breached their fiduciary duties under ERISA (*Id.* ¶¶ 147–52, 160–67); and (3) to recover attorneys' fees (*Id.* ¶¶ 178–79). On March 29, 2019, Plaintiffs filed a Joint Motion for Partial Summary Judgment. (ECF No. 45). Defendants filed a Cross Motion for Summary Judgment on April 12, 2019. (ECF No. 46). Both motions remain pending. On June 13, 2019, Defendants moved to stay discovery pending the Court's ruling on the motions for summary judgment. (ECF No. 51). The Court denied this request but agreed to extend the discovery deadlines to August 28, 2019. (ECF No. 56 at 1). On August 26, 2019, Judge

Hollander granted the parties' Joint Motion to Amend the Scheduling Order and extended: the Requests for Admissions deadline until 30 days after this Court's Order on the pending discovery motions (ECF Nos. 57, 58, 59, 60); the Discovery Deadline for sixty days after this Court's Order regarding the same; and the Dispositive Motions deadline for 90 days after this Court's Order on the same. (ECF No. 63).[2]

The current discovery disputes relate to redacted documents produced by Defendants in discovery, Defendants' objections to ten interrogatories served by Plaintiff Chavis, and the permissible scope of depositions. (ECF No. 57 ¶¶ 12–14, 16–17). The nature of these disputes will be outlined in turn.

First, in response to Plaintiffs' Requests for Production, Defendants served upon Plaintiffs redacted versions of the following documents: communications between the Board and other plan participants regarding those plan participants' suspension of benefits; a report from Johnson & Krol, LLC ("the Report") that contained recommendations concerning the suspension of both Plaintiffs' and other plan participants' benefits; and a copy of the Board's minutes from April 27, 2009 to September 28, 2017. *Id.* ¶¶ 12–14. Plaintiffs seek to compel Plaintiffs to produce the unredacted versions of these documents, particularly seeking the name, address and phone number of other Plan participants. (ECF No. 58-1 at 5).

Second, on March 29, 2019, Plaintiff Chavis served his first set of Interrogatories on the Defendant Plan. (ECF No. 57-2 ¶ 16; ECF No. 58-2 ¶ 14). The first ten interrogatory questions sought information regarding the suspension of other Plan participants' benefits, and again centered around identifying those participants. (ECF No. 60-2 at 6–10). On June 6, 2019, the Defendant Plan sent a letter requesting that Plaintiff Chavis withdraw these ten Interrogatories.

---

[2] As discussed with Counsel during the telephone call on September 25, 2019, once an order on these motions is docketed, such deadlines will commence.

(ECF No. 57-2 ¶ 18; ECF No. 57-7 at 2).  Plaintiff Chavis, by letter the same day, denied this request.  (ECF No. 58-2 ¶ 16; ECF No. 58-3 at 2–4).  On June 28, 2019, the Defendant Plan served its Response to Plaintiff's First Set of Interrogatories, wherein the Plan objected to each of the ten challenged Interrogatories.  (ECF No. 60-2 at 6–10).

Finally, Plaintiffs served upon various Defendants Notices to Take Depositions.  (ECF No. 57-2 ¶ 17).  Defendants object to the questioning of these witnesses, to the extent that those questions pertain to matters outside of the AR.  (ECF No. 57-1 at 9, 16).

## II.    LEGAL STANDARD

### A.    Motion for Protective Order

Parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and otherwise proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Under Federal Rule of Civil Procedure 26(b)(1), relevance, rather than admissibility, governs whether information is discoverable.  *Id.*  Importantly, the 2015 revisions to Rule 26(b)(1) removed the often-misconstrued phrase "reasonably calculated to lead to the discovery of admissible evidence."[3]  This Amendment reminds parties that discovery must also be proportional to the needs of the case, considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Notably both parties and the Court have a

---

[3] As explained in the Advisory Committee Notes to the 2015 revisions, this phrase was never intended to define the scope of discovery, nor was it ever intended to bypass the core requirement of relevance for any discovery pursued. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.  *See also In re: American Medical System, Inc. Pelvic Repair Systems Product Liab. Litig.*, 2016 WL 4411506, at *3 (discussing the 2015 amendment to rule 26(b)(1)).

shared responsibility to consider proportionality in resolving discovery disputes. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Rule 26(c)(1) permits courts to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). Further, both Rule 26(c)(1) and Local Rule 104.7 require that prior to requesting court action, the moving party confers with the other side in good faith to resolve the dispute and provide certification to that effect. *Id.* Where a protective order is sought, the moving party bears the burden of establishing good cause. *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, 2018 WL 5080944 (D. Md. Oct. 18, 2018) (citing *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 278 (D. Md. 2012)). This burden requires more than "stereotyped and conclusory statements," but rather the "movant must present a 'particular and specific demonstration of fact' as to why a protective order should issue." *Webb*, 283 F.R.D. at 279 (quoting *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)). "To determine whether the movant has met his burden, a court must balance the 'interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production.'" *Fidelity & Guaranty Life Ins. Co. v. United Advisory Grp., Inc.*, 2016 WL 632025, at *4 (D. Md. Feb. 17, 2016) (quoting *UAI Tech, Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 181 (M.D.N.C. 1988)). "In other words, the district Court 'must weigh the need for the information versus the harm in producing it.'" *Slager v. Southern States Police Benevolent Ass'n, Inc.*, 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016) (quoting *Helping Hand, LLC v. Balt. Cty.*, 295 F. Supp. 2d 585, 592 (D. Md. 2003)).

Despite the broad discretion conferred on trial courts to decide when a protective order is appropriate, and what degree of protection is required, the standard for issuance of a protective order is high. *CX*, 2018 WL 5080944, at *3. [4]

## B.    Motion to Compel

As with a motion for protective order, Local Rule 104.7 and Federal Rule of Civil Procedure 37 require that counsel confer regarding discovery disputes and make a good faith effort to settle disputes without court intervention. Fed. R. Civ. P 37(a)(1); R. 104.7 (D. Md. 2018). This Court will not contemplate discovery motions unless the moving party files a certificate either: (a) reciting the date, time, and place of the discovery conference between the parties, and the names of the participants therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court. L.R. 104.7. Additionally, Local Rule 104.8 provides, in relevant part:

> If a party who has propounded . . . requests for production is dissatisfied with the response to them and has been unable to resolve informally . . . any disputes with the responding party, that party shall serve a motion to compel within thirty (30) days of the party's receipt of the response. . . . The parties shall serve motions and memoranda under L.R. 104.8 in accordance with Fed. R. Civ. P. 5(a) and shall not serve them through the Court's electronic filing system nor file with the Court notices of service of the motion or memoranda.

L.R. 104.8(a). This Rule also requires that the parties "hold [a] conference required by L.R. 104.7 after serving upon one another all of the documents relating to the motion to compel." L.R. 104.8(b). As with a motion for protective order, the burden is on the party resisting discovery. *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005); *Hake v. Carroll County*, 2014 WL 3974173, at *5 (D. Md. Aug. 14, 2014) (stating the party opposing a motion to compel carried

---

[4] *See also American Medical Systems*, 2016 WL 4411506, at *3 ("[A] court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition.").

the burden "to establish that the information is not relevant, or that the discovery request should be denied").

## III.    ANALYSIS

### A.    Compliance with the Local Rules

Defendants first argue that "at least with respect to Defendants' document production," Plaintiff's Motion to Compel should be denied as untimely. (ECF No. 59 at 9–10). Citing Local Rule 104.8(a), Defendants contend that Plaintiffs should have filed their Motion to Compel within thirty days of March 20, 2019 (the day that Defendants served their final document production on Plaintiffs). *Id.* at 9. As Plaintiffs received these responses over three months ago, Defendants argue that Plaintiffs' Motion is untimely. *Id.* at 9–10. Plaintiffs counter that their Motion is timely because "Defendants did not unequivocally refuse to produce the requested discovery until June 13, 2019." (ECF No. 60 at 11–12).[5]

While Plaintiffs did not fully comply with Local Rule 104.8(a), as described above, that failure is not fatal to their Motion. Failure to comply with Local Rule 104.8 does not *per se* require dismissal of a party's motion to compel. *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 497 (D. Md. 2000) ("[A]n absolute rule requiring [dismissal] without first determining whether the opposing party would suffer any real prejudice if the motion is granted would be too harsh a construction of the local rule." (citing Fed. R. Civ. P. 1)). If the non-moving party will not suffer any undue prejudice as a result of the moving party's failure to comply with Local Rule 104.8, and there is good cause to excuse the failure to comply, then the moving party's motion will not be dismissed because of the procedural defect. *See Blind Indus. & Servs. v. Route 40 Paintball*

---

[5] Although not addressed by Counsel, it appears from the record, that 104.8 does apply, as this request for production did receive *some* response. L.R. 104.8 ("This procedure shall not govern motions to compel . . . answers to interrogatories or to requests for production . . . where no responses at all have been served).

*Park*, 2012 WL 4470273, at *1–2 (D. Md. Sept. 26, 2012) (finding Motion was not timely filed, and such technical tardiness was fatal, as it was unjustified). Of note, here, Judge Hollander has extended Discovery Deadlines awaiting the resolution of this discovery dispute, and thus, such a Motion to Compel will not disrupt the Scheduling Order. *See Webb*, 2012 WL 3139551, at *1 (emphasizing plaintiff's belated motion was particularly troubling because if granted, it would disrupt the Scheduling Order by extending the discovery deadline, and thus denying plaintiff's motion to compel).

Here, there is evidence that the parties communicated about the disputed discovery matters. *See* Defs.' Letters to Pls.' Counsel (ECF No. 57-7); Pls.' Letters to Defs.' Counsel (ECF No. 58-3); and ECF No. 58-1 ¶ 16(b) (attesting to an in-person conference between Pls.' and Defs.' counsel on March 25, 2019, prior to Plaintiff Chavis serving his First Set of Interrogatories upon Defendant Plan). However, there is no evidence that Plaintiffs served their Motion to Compel upon Defendants prior to involving the Court in the dispute.[6] Nor is there any indication that the parties have met and conferred, pursuant to Local Rule 104.7, at any time since the filing of any of these motions.[7]

---

[6] Local Rule 104.8 provides the procedure which "shall be followed in litigating motions to compel answers to interrogatories." Loc. R. 104.8(a). First, should a requesting party receive responses to interrogatories or requests for production that are "dissatis[factory]," the requesting party "shall serve a motion to compel within thirty (30) days of the party's receipt of the response." *Id.* The motion (and accompanying memoranda) must be served upon the other party in accordance with Federal Rule of Civil Procedure 5(a). *Id.* Once the motion to compel is served upon the responding party, the responding party has fourteen (14) days to serve its response, and the moving party then has fourteen (14) days to serve a reply. *Id.* Even after this Procedure, however, the parties are not entitled to file their pleadings with the Court. Rather, if service of the papers does not lead to a resolution of the dispute, then "counsel must hold the conference required by L.R. 104.7." L. R. 104.8(b). Counsel must meet and confer with one another "and make sincere attempts to resolve the differences between them." L.R. 104.7. If the parties again fail to reach an agreement, only then can the parties involve the Court in the dispute.

[7] Even after following the procedure outlined in Rule 104.8, *supra* note 6, the parties are not entitled to file their pleadings with the Court. Rather, if service of the papers does not lead to a resolution of the dispute, Counsel must meet and confer with one another "and make sincere attempts to resolve the differences between them." L.R. 104.7. If the parties again fail to reach an agreement, only then can the parties involve the Court in the dispute. *See* L.R. 104.8(c)(i).

Under the facts of this case, however, dismissal of Plaintiffs' Motion is not warranted. Plaintiffs' Motion – filed with their Response to Defendants' Motion for a Protective Order – seeks: (1) unredacted copies of the documents at issue; (2) full responses to the ten Interrogatories at issue; and (3) a ruling on what the proper scope of discovery is. (ECF No. 58-1 at 28). Similarly, Defendants' Protective Order seeks a ruling: (1) forbidding discovery of the unredacted documents at issue; (2) excusing Defendant Plan from responding to the ten Interrogatories at issue; and (3) a ruling that the scope of discovery is limited to the administrative record. (ECF No. 57-1 at 22–23). Dismissing Plaintiffs' Motion, only to rule on the same substantive issues in considering Defendants' Motion, would be inefficient. *See* Fed. R. Civ. P. 1 (calling for a construction and administration of the Federal Rules that best secures "the just, speedy, and inexpensive determination of every action and proceeding"). The two Motions can be best adjudicated simultaneously, and no prejudice will accrue to Defendants.

### B.    Waiver

For their part, Plaintiffs argue that Defendants have waived their relevance objections. Plaintiffs assert that this wavier occurred in three ways. First, Plaintiffs contend that by asserting general objections in response to Plaintiffs' Request for Production of Documents (served in December 2018), the Defendants waived their right to challenge Plaintiffs' May 2019 demands for unredacted versions of those documents. (ECF No. 58-1 at 10–11; ECF No. 57-2 ¶ 15). This argument is unpersuasive. Defendants are challenging Plaintiffs' subsequent demand for unredacted versions of documents that Defendants have already produced pursuant to the December 2018 requests, not the original documents to which general objections were made. (ECF No. 57-1 at 7–9; ECF No. 57-2 ¶ 15).

Second, Plaintiffs argue that even if those "general objections" were valid, Defendants' Responses did not assert relevance as a basis to object. (ECF No. 58-1 at 10–20). This argument fails for two reasons. First, as previously discussed, the instant challenge concerns Defendants' failure to agree to Plaintiffs' *May 2019* demands for the unredacted versions of Defendants' document production. The objections Defendants asserted in responding to Plaintiffs' December, 2018 document production are inapposite. Second, within each Response Plaintiffs refer to "General Objection number 4." That objection states, in part, that Defendant objects to requests for "all" or "each and every" document, as such requests, *inter alia*, "call for irrelevant information." (ECF No. 58-8 at 3; ECF No. 58-9 at 3; ECF No. 58-10 at 3).

Third, Plaintiffs argue that Defendants waived any relevance objections because in their Responses to Plaintiffs' Requests for Production of Documents, Defendants referred to the already-produced redacted documents. This argument is also unpersuasive. Plaintiffs have not provided any case law to support the notion that by referring to already-produced redacted documents, Defendants waived their right to object to a subsequent request for the production of those documents in unredacted form. Ultimately, no basis for waiver is evident from the record.

Notwithstanding this Court's decision — that no waiver has occurred under the facts before it — the Court will take this opportunity to remind all litigants practicing before it that general objections, as well as "boilerplate" objections, are highly disfavored. Nonetheless, their use remains common among parties appearing before the Court. The Court surmises that their use persists out of a fear that the failure to assert them somehow will waive an objection. To the contrary, because they are highly uninformative as to the nature of the objection, their very use cuts in favor of waiver, not against it. *See, e.g*., Rule 33(b)(4) (requiring that when objecting to interrogatories, the grounds must be stated with specificity or risks waiver). Though not

necessarily an issue in this case, there are instances where such objections can obscure what is and is not being produced, especially when coupled with the mischievous phrase "notwithstanding these objections," a practice specifically prohibited in response to requests for production. Fed. R. Civ. Proc. 34(b)(2)(c) ("An objection must state whether any responsive material are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Most importantly, such objections are of virtually no help in assisting the parties or, as necessary, the Court in attempting to narrow or resolve the discovery dispute. Objections of this nature neither adequately frame the dispute nor permit any evaluation as to whether reasonable steps have been taken by the responding parties.

### C. Scope of Discovery

The parties both contest the applicable scope of discovery. In the Defendants' view, appellate review of Plaintiffs' claims is limited only to the Administrative Record ("AR"), and therefore discovery of any material from outside of the AR is improper. (ECF No. 57-1 at 14–20). Conversely, Plaintiffs argue that discovery outside of the AR is proper because the information redacted from Defendants' document production is relevant both to Plaintiffs' benefits claims and breach of fiduciary duty claims. (ECF No. 58-1 at 24–25, 27–28).

### Scope of Discovery for Benefits Claims

The parties make competing arguments about the applicable standard of review for Plaintiffs' benefits claims—*de novo* or abuse of discretion. *See, e.g.*, ECF 57-1 at 10–14 (Defs.' Motion); ECF 58-1 at 25–26 (Pls.' Motion). The standard is critical to resolution of the underlying case. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Supreme Court held:

> [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under [29] U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan

gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115.[8]

Because the appropriate standard of review is both vigorously contested, and pivotal to resolving the substantive issues in the case, it is best left to the trial judge who will be addressing those issues, including those raised in the pending dispositive motions. However, even assuming for *arguendo* that Plaintiffs are correct and that a *de novo* standard of review applies (which, in turn, might support a somewhat broader scope of discovery), this would not support wholesale discovery beyond the AR. As discussed by the Fourth Circuit in *Quesinberry v. Life Insurance Company of North America*, even in a case of *de novo* review, a trial court should limit its consideration of matters outside the AR to certain narrow circumstances:

> [W]e conclude that courts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim. Exceptional circumstances that may warrant an exercise of the court's discretion to allow additional evidence include the following: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. We do not intimate, however, that the introduction of new evidence is required in such cases. A district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense.

987 F.2d 1017, 1026–27 (4th Cir. 1993) (*en banc*).

---

[8] *See also Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 259–60 ("In *Glenn*, the [Supreme Court] held that judicial review of an ERISA plan administrator's decision is "under a *de novo* standard unless the plan provides to the contrary." But when the plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard.") (citations and internal quotation marks omitted).

By contrast, when examining benefit determinations under an abuse of discretion standard, a trial court's consideration of evidence (and, correspondingly, the scope of discovery) is more restricted. *See Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). Even in such cases, however, limited evidence (and discovery) beyond the AR that was known to the administrator at the time of benefits review can be considered to the extent it illuminates one or more of the so-called *Booth*[9] factors that guide courts within this Circuit in determining whether an abuse of discretion by the administrator took place. *Helton v. AT&T, Inc.*, 709 F.3d 343, 353–54 (4th Cir. 2013) ("[A] district court in many cases may not be able to adequately assess a number of the *Booth* factors in the absence of evidence from outside the administrative record."). Thus, neither standard of review acts as strict bar to the consideration of evidence beyond the AR in denial of benefits claims pursuant to 502(a)(1), although the scope of discovery as to such materials are restricted.

### Scope of Discovery for Breach of Fiduciary Duty Claims

In addition to pursuing claims based on denial of their individual benefits, under § 502(a)(2), beneficiaries may bring an action against a fiduciary under 29 U.S.C. § 1109(a). To state a claim for breach of a fiduciary duty under ERISA, the plaintiff must allege: (1) the defendant was a fiduciary, (2) who was acting within his fiduciary capacity, and (3) breached his duty. *Cuthie*

---

[9] In *Booth v. Wal–Mart Stores, Inc.*, the Fourth Circuit identified eight nonexclusive factors for courts to consider in evaluating whether a plan administrator abused its discretion. This includes such factors as:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d 335, 342–43 (4th Cir. 2000).

*v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 494 (D. Md. 2010).   As Judge Hollander noted in

ruling on Defendants' Motion to Dismiss, "[A]lthough an individual may bring a claim using §

502(a)(2), only the plan as a whole, and not an individual beneficiary, is entitled to relief under

this section of ERISA."  (ECF No. 33 at 13).[10]

      With regard to Plaintiffs' breach of fiduciary duty claim, Plaintiffs allege breach by

Defendants: (1) "failing to administer the 2009 Plan in accordance with its terms;" (2)

"misrepresenting the terms of the 2009 Plan to Plaintiffs;" (3) "failing to administer the 2009 Plan

solely in the interests of the Plan participants and beneficiaries;" (4) failing to administer the 2009

Plan for the exclusive purpose of providing Plan benefits to participants; and" (5) "denying

Plaintiff Chavis and Plaintiff Taylorson their 2009 Plan benefit entitlement." (ECF No. 1 ¶ 150).

Plaintiffs also assert that Defendants Hayes and Troll breached their fiduciary duty by providing

misinformation that "Plaintiffs Chavis' and Taylorson's working in non-Union management

positions with Johnson Controls would have no impact on their Plan benefits." *Id.* ¶ 164.

      ERISA claims that allege plan fiduciaries breached their fiduciary duties to plan

participants and beneficiaries are distinguishable from those made under other ERISA benefits

provisions because they concern materials and events beyond the AR.  For this reason, several

district courts have permitted limited discovery outside of that which was within the AR in such.

*See, e.g.*, *Coffey v. Hartford Life & Accident Ins. Co*., 318 F.R.D. 320, 325 (W.D. Va. 2017);

*Malbrough v. Kanawha Ins. Co.,* 943 F. Supp. 2d 684, 691–93 (W.D. La. 2013); *Jackson v. Rohm*

*& Haas Co*., 2007 WL 2916396 (E.D. Pa. Oct. 1, 2007).  Without direct guidance to the contrary,

---

[10] Defendants dedicate a considerable portion of their briefs to arguing that Plaintiffs are not entitled to discovery
outside of the AR, because their breach of fiduciary duty claims fail on the merits.  (ECF No. 57-1 at 11–14; ECF No.
59 at 11–12).  In deciding this discovery dispute, the Court will not address issues Judge Hollander already decided
(ECF No. 33 at 20–22) or will consider when deciding the pending dispositive motions.  That is, the Court will not
restrict discovery based on Defendants arguments as to their chances of defeating the substantive claims when those
claims are, at this point, still fully viable and pending.

the Court finds the rationale of these courts to be persuasive in potentially allowing discovery beyond the AR in breach of fiduciary duty claims.

Having determined that there is no bright line limitation on a court's consideration of materials beyond the AR, in the context of individual denial of benefits claims or accompanying breach of fiduciary duty claims, the question remains if any of the materials sought: (1) were available to the administrator and otherwise relevant and proportional so as to justify discovery to resolve Plaintiffs' denial of benefits claims; and/or (2) are relevant and proportional to the remaining breach of fiduciary duty claim. Further, the same relevancy/proportionality analysis applies to information *within* the AR that was redacted by Defendants.

### 1. The Personal Identifying Information of Other Plan Participants

Defendants contest Plaintiffs' request for the identifying information of other Plan participants that is redacted from Defendants' production of the AR. Defendants argue that such is not relevant because, "[w]hat information these plan participants may have, if any, is speculative at best and was not considered by the plan administrator when denying Plaintiffs' benefits." (ECF No. 57-1 at 21). Further, Defendants urge that such information is not proportional to the needs of this case. (ECF No. 59 at 5–8). They contend that "the burden on Defendants," coupled with the privacy concerns of those other plan participants, "would greatly outweigh any speculative benefit to Plaintiffs." *Id.* at 7.

Even if the redacted materials fall outside of the AR, at least two *Booth* factors provide the bridge to relevance for purposes of establishing the scope of discovery: (1) whether the provisions at issue have been applied consistently; and (2) whether the fiduciary's interpretation was consistent with … earlier interpretations of the plan. *See Booth*, 201 F.3d at 342 (considering five factors previously outlined by the Court in *de Nobel*, for determining the reasonableness of a

fiduciary's discretionary decision, and five other factors "which were somewhat different from, but not inconsistent with *de Nobel*," and combining them into eight nonexclusive factors that a court may consider). Additionally, the Fourth Circuit instructs that removal of trustees is proper under § 502(a)(2) when the plan fiduciaries "continu[ously] act[] in an objectively unreasonable manner that conflict[s] with their duties of loyalty and care." *Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006); *see also Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 n.6 (4th Cir. 1996) ("Removal of trustees is appropriate when the trustees have engaged in repeated or substantial violations of their fiduciary duties . . . ."). Thus, allowing Plaintiffs contact information for other similarly situated plan participants could allow them to determine whether Defendants also misrepresented the terms of the plan (or the relevant or authentic version of the plan) to others. For example, other beneficiaries could share whether any Plan fiduciaries communicated with them regarding whether their planned post-retirement employment was "unauthorized" so as to risk suspension.

In light of the relevance discussed above, Defendants' arguments are unpersuasive. First, Defendants have not articulated any specific burden so as to justify withholding the identity of other plan participants who were denied plan benefits under a similar justification to that communicated the Plaintiffs — *i.e.*, an assertion that after initially granting retirement benefits, Plaintiffs' subsequent "unauthorized employment" triggered an Internal Revenue Service requirement that benefits be withheld until age sixty-two or the termination of employment. Such is particularly unconvincing given Defendants' position that all materials produced were, in fact, within the underlying AR. Defendants presumably have the redacted information at their fingertips.

In arguing that the sensitive nature of the other plan participants' identifying information as an additional basis for protection, Defendants rely on *Smith v. Montgomery County*, 573 F. Supp. 604, 614 (D. Md. 1983). There, this Court entered a protective order to prevent public disclosure of the names of persons subject to strip searches without probable cause but permitted disclosure of those names to the party moving for discovery of those names. Here, Plaintiffs only seek other participants' names, addresses, and telephone numbers. (ECF No. 60 at 6–7). Public disclosure is not at issue. Further, releasing the contact information to the Plaintiffs does not present any significant privacy concerns as Plaintiffs do not seek other personally-identifiable or sensitive information (such as social security numbers or banking information).[11] Finally, privacy is left in the hands of the potentially affected parties; if other plan participants do not want to disclose or discuss information with Plaintiffs, they can decline. The specific information requested is addressed in turn.

      a. The Plan Participants' Information Redacted from the Administrative Record, Bates Nos. D000595-D001124

The AR contains pension plan applications from other plan participants, suspension letters, and information other plan participants provided in disputing their benefits suspensions. *E.g.*, Bates Nos. D000602-D000622. To the extent the AR contains the names and contact information (address, telephone number, or email address) of other similarly-situated plan participants whose benefits were suspended under similar conditions (as described by the Court above), Plaintiffs are entitled to discovery of that. As noted above, this information is relevant both to Plaintiffs' benefits denial and to Plaintiffs' § 502(a)(2) claims on behalf of the Plan

---

[11] As mentioned by the Plaintiffs, if Defendants remain "motivated" by confidentiality concerns, they can prepare a confidentiality agreement, and present such draft, and the rationale for such, to the Court and Defendant. (ECF No. 60 at 2).

(asserting that the Trustees should be removed because of misrepresentations made to those Plan participants).

### b. The Johnson & Krol Report, Bates Nos. D001640-D001653

The AR also contains a Report from Johnson & Krol, LLC, including recommendations on whether certain Plan participants' benefits should be suspended. (ECF No. 57-4). This report is unredacted with the exceptions of the name and age of each Plan participant whose benefits were considered for suspension. *Id.* at 4. For the same reasons that the names redacted in other portions of the AR are relevant, the names of those Plan participants listed in the Johnson & Krol Report are relevant to Plaintiffs' claims. However, not all the names will be relevant because the Report does not call for the suspension of all participants' benefits. Accordingly, Defendants are ordered to provide a new copy of the Report that leaves unredacted the names of Plan participants whose benefits were suspended after the Board received this Report to the extent those Plan participants are similarly situated and their benefits were suspended under the same or similar circumstances.

### c. Plaintiff Chavis's First Set of Interrogatories on Defendant Plan, Nos. 1-10

Defendants also seek a protective order excusing them from answering Interrogatories Numbers 1–10 in Plaintiff' Chavis's First Set of Interrogatories on the Defendant Plan. (ECF No. 57-1 at 23; ECF No. 60-2 at 6–10 (the ten Interrogatories at issue)). Defendants contend that these Interrogatories seek information "clearly outside the administrative record as it has nothing to do with the Board of Trustees' decision to suspend Plaintiffs' benefits." (ECF No. 57-1 at 16). Defendants also reiterate their privacy concerns in disclosing the Plan participants' contact information. *Id.* at 17.

The Court agrees with Defendants that, as worded, the Interrogatories go beyond the proper scope of discovery. Interrogatories One, Two, and Three each seek the name and address of every Plan participant that received a Pension between January 1, 2009, and to the present. (ECF No. 60-2 at 6–7). Further, Interrogatories Numbers Four and Five seek the name and address of each participant that is eligible for a Pension, but has not yet applied for one. *Id.* at 7–8. Interrogatories Six, Seven and Eight seek the identification of any plan participant whose benefits were suspended for three different time periods from 2009 to 2016, without any qualifier as to the circumstances of the suspension. Interrogatories Nine and Ten seek the identification of plan participants during the relevant time period "based on any section of the Internal Revenue Code." *Id.*

Plaintiffs' benefits were revoked based on Defendants' assertion that they had obtained "unauthorized employment" after retirement which, in turn, triggered IRS provisions that mandated rescission of benefits until participants reached age sixty-two or termination of that employment. Additionally, Plaintiffs allege that they were provided incorrect information as to whether certain post-retirement employment was authorized under the Plan. Defendants are instructed to identify by name, address and phone number the other Plan participants during the relevant time frame whose benefits were similarly denied under the same or similar circumstances—*i.e.* based on obtaining "unauthorized employment" that, in turn, triggered any IRS provision that (from Defendants' standpoint) justified a denial, rescission or suspension of benefits.

### d. The Unredacted Board Meeting Minutes

Defendants further seek a protective order for unredacted versions of the Board Meeting Minutes produced in the AR. (ECF No. 57-1 at 21–22; ECF No. 57-5). Defendants argue "Plaintiffs have not carried their initial burden of showing that the discovery sought is relevant,"

and assert that the redacted portions pertain "to matters unrelated to Plaintiffs' claims," that "may contain private or confidential information unrelated to Plaintiffs." (ECF No. 57-1 at 22).

Defendants have not indicated what the redactions contain, other than asserting that the redacted portions are irrelevant/unnecessary to the Court's consideration of Plaintiff's claims. (ECF No. 57-1 at 9). Most of the documents are heavily, if not fully, redacted. (*See, e.g.*, ECF No. 57-5). Considering that the Minutes do contain some discussion of Plaintiffs' and others' benefits suspensions (*e.g.*, ECF No. 57-5 at 84), the Court finds that Plaintiffs are entitled to limited additional discovery of the Board's Meeting Minutes, which may bear on Plaintiffs' breach of fiduciary duty claims. Defendants therefore must produce unredacted versions of the Board's Meeting Minutes as to those sections where the Board discussed the suspension of benefits of those individuals whose benefits were denied, suspended or rescinded because they obtained "unauthorized employment" so as to trigger an IRS requirement that justified such action. This includes either a specific individual or the topic in general

e. Defendants' Deposition Testimony

Finally, Defendants seek an order limiting the scope of depositions to information contained in the AR. (ECF No. 57-1 at 22–23). The Court is not willing to enter such an Order at this time, and cannot anticipate all questions or topics that Plaintiffs might seek to explore. Nonetheless, the Court instructs the parties that the scope of such depositions, while not limited to information in the AR, should nonetheless conform to the Court's rulings and guidance as set forth above.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Compel (ECF No. 58) is GRANTED IN PART and DENIED IN PART.  Defendants' Motion for a Protective Order, ECF 57, is similarly GRANTED IN PART and DENIED IN PART.  A separate Order is filed herewith.

Dated:  October 3, 2019

_____/s/_____

J. Mark Coulson
United States Magistrate Judge
